# EXHIBIT 9



227 W. MONROE STREET  SUITE 1900  CHICAGO, IL 60606
T 312.820.3400  F 312.820.3401  www.Venable.com

November 8, 2022

T 202.721.5435
F 202.344.8300
JMDorsky@Venable.com

**VIA E-MAIL**

Counsel of Record for CAO Lighting, Inc.
Barnes & Thornburg LLP
todd.vare@btlaw.com
heather.repicky@btlaw.com
jeff.morgan@btlaw.com
roya.rahmanpour@btlaw.com
seth.gold@btlaw.com
adam.kaufmann@btlaw.com
ronald.cahill@btlaw.com
jeff.barron@btlaw.com

Re:   *CAO Lighting, Inc. v. Signify North America Corporation*,
       No. 2:21-CV-8972-AB-SP (C.D. Cal.)

Dear Counsel,

We write concerning several deficiencies in Plaintiff Cao Lighting, Inc.'s ("CAO Lighting") Infringement Contentions and Charts, served on September 9, 2022 ("Infringement Contentions"). Signify North America Corporation ("Signify") has been diligently analyzing the Infringement Contentions, including the over 1,300 products purportedly identified in Exhibit A of the Infringement Contentions as allegedly infringing the '961 patent asserted claims. However, as explained in detail below, CAO Lighting's Infringement Contentions do not properly specify what the accused products are, what CAO Lighting's bases for infringement are, or what CAO Lighting's bases are for its contentions concerning representativeness. The Infringement Contentions' failure to provide this basic information renders them deficient and non-compliant under N.D. Cal. PLR 3-1.

In addition, we further write concerning the recent decision by the USPTO Patent Trial and Appeal Board ("PTAB") in the *inter partes* review proceeding filed by Petitioners Wolfspeed, Inc. and IDEAL Industries Lighting, LLC d/b/a Cree Lighting (IPR No. 2022-00847, "Cree IPR"), in which the PTAB instituted review of numerous claims of the '961 patent, including all claims that CAO Lighting has asserted against Signify. Signify intends to seek a stay of CAO Lighting's claims in this litigation in view of at least the institution decision in the Cree IPR, as well as the subsequent IPR petitions and motions for joinder recently filed by the defendants in the related Delaware cases (IPR2023-00123), and Feit Electric Co. (IPR2023-00129).  *See, e.g.*, *Weserve Drone, LLC v. SZ*



Counsel for CAO Lighting
November 8, 2022
Page 2

*DJI Tech. Co., Ltd.*, No. 19-04382-AB (AFMx), 2020 WL 4373365 (C.D. Cal. Mar. 17, 2020) (Birotte, J.) (granting stay of claims pending institution and final resolution of IPR).

> **A.  CAO Lighting's Failure to Identify Accused Instrumentalities with the Requisite Specificity under N.D. Cal. PLR 3-1**

In its Infringement Contentions, CAO Lighting defines "Accused Products"[1] as "lighting source products made, used, sold, or offered for sale, or imported into the United States by Defendants that incorporate a Light Emitting Diode (LED), including the LED lighting source products identified and referenced in the associated attachment (Exhibit A1) ('Accused Products') and Infringement Claim Charts (Exhibits 1-9)." Cover Pleading at 3.

As an initial matter, to the extent that this definition of "Accused Products" is intended to cover any products that are not expressly identified in the Infringement Contentions, such definition is de facto deficient under the N.D. Cal. PLRs, which unambiguously require the identification of any Accused Instrumentalities to be "as specific as possible." N.D. Cal. PLR 3-1. To the extent that the definition of "Accused Products" is limited only to the purported listing of products set forth in Exhibit A, this identification is likewise deficient. In particular, Exhibit A contains over 1,300 entries which purport to reference individual products. But CAO Lighting only provides an identifying "Product No." for some of those listed products, and *no* product numbers for hundreds of other entries in Exhibit A. Indeed, a simple review of the Exhibit A demonstrates that this information is missing from a large number of entries on Exhibit A. *See, e.g.*, Ex. A at 3-4, 8-11, 20-23, 30-31. There is no reasonable basis for CAO Lighting to provide this information for only some entries on Exhibit A, while declining to do so for others, thus attempting to shift the burden to Signify to identify purportedly accused products. Indeed, by identifying such numbers for the other Signify products, CAO Lighting has demonstrated that it could have provided this information, but chose not to do so. Thus, CAO Lighting's identification is not "as specific as possible," and its failure to do so has made this process unnecessarily and unduly burdensome on Signify.

Further compounding this issue, CAO Lighting appears to provide product numbers that do not correspond to any Signify products, and instead appear to be mistakes or typos. For example, page 1 identifies Product No. "56102," which does not correspond to any Signify product. Based on Signify's internal investigation, it appears that this may be an intended reference to Product No. 56102**7**. Furthermore, CAO Lighting's product listing contains a significant number of duplicative entries without any explanation for doing so. For example, Product No. 463000 appears on page 1

---

[1] Signify understands "Accused Products" to refer to the "Accused Instrumentalities" referenced in N.D. Cal. PLR 3-1, and treats that term accordingly herein.



Counsel for CAO Lighting
November 8, 2022
Page 3

of Exhibit A, and appears again on page 3 of the same exhibit. From our review, this duplicative product listing occurs well over 100 times in Exhibit A.

It is CAO Lighting's burden (not Signify's) to identify all Accused Instrumentalities in the manner required by the N.D. Cal. PLRs, and it has not done so. Its failure to do so has materially interfered with Signify's ability to comply with its PLR 3-4 obligations. This issue is compounded by the exorbitant number of accused products in this case, which has already resulted in a heavy burden on Signify.

### B. CAO Lighting's Failure to Identify the Basis for its Infringement Contentions

In addition to the issues identified above, CAO Lighting's Infringement Contentions also fail to comply with other requirements of N.D. Cal. PLR 3-1. Under PLR 3-1, CAO Lighting has the burden of providing contentions that set forth its theory of infringement with a "degree of specificity … sufficient to provide reasonable notice to the defendant why the plaintiff believes it has a 'reasonable chance of proving infringement.'" *Essociate, Inc. v. 4355768 Canada, Inc.*, No. 14-cv-679, 2015 WL 12745799, at *5 (C.D. Cal. Jan. 14, 2015) (citation omitted). This burden "cannot be met simply by parroting claim language." *Finjan, Inc. v. Proofpoint, Inc.*, Case No. 13-cv-05808-HSG, 2015 WL 1517920, at *6 (N.D. Cal. Apr. 2, 2015); *see also GN Resound A/S v. Callpod, Inc.*, No. 11-cv-04673 SBA, 2013 WL 1190651, at *4 (N.D. Cal. Mar. 21, 2013) (holding that infringement contentions did not satisfy Rule 3-1(c) where they simply parroted the claim language and did not identify how the defendant's product satisfied the claim limitations). CAO Lighting fails to satisfy this burden in its Infringement Contentions.

For example, CAO Lighting's contentions concerning claim 21 (the only remaining independent claim of the '961 patent) entirely fail to provide any indication or evidence to suggest that any Accused Instrumentality performs the recited limitations. For example, reproduced below is CAO Lighting's entire contention for claim 21 in Exhibit 1:

| [21a] The semiconductor light source as recited in claim 8 wherein: | See analysis above. |
|---|---|
| [21b] said at least one semiconductor chip is a light emitting diode (LED) chip configured to output light at greater than about 40 milliwatts, and | Defendants' A-Shape lamps include at least one LED chip that is configured to output light at greater than about 40 milliwatts, which is a measurement of the LED chip's radiometric power output. This can be determined directly by measurement or by estimations based on the published data from either the product or the data sheets for the relevant LED chips used in the particular products. The data required from the product includes power consumption of the lamp, efficacy of the lamp (lumens per watt), and the number of LEDs in the lamp. The data required from the relevant data sheets includes the efficacy, the operating voltage and current, and the emission wavelength. |
| [21c] said LED chip is configured to emit monochromatic visible light | As described above, the LED packages and/or LED chips in the A-Shape lamps emit monochromatic light—that is, "light of a single wavelength or narrow range of wavelengths." The combination of the monochromatic (blue) light, together with the phosphor coating, results in white light visible to humans. |



Counsel for CAO Lighting
November 8, 2022
Page 4

CAO Lighting's contention as to the 40 milliwatts limitation consists of a mere repetition of the claim language, followed by its conclusory "say so" as to how the limitation *might* be determined, without any demonstration or citation to documents that could serve to put Signify on notice as to the basis of this contention. At most, CAO Lighting's contention describes a mere possibility that it may one day choose to demonstrate. This is insufficient under PLR 3-1. *See, e.g.*, *Sung v. Shinhan Diamond Am., Inc.*, No. 14-cv-530, 2015 WL 12681308, at *3 (C.D. Cal. Feb. 25, 2015) (finding infringement contentions deficient under PLR 3-1 where "claim charts are conclusory and do not actually specify the location of each element within the accused product").

The same is also true for at least CAO Lighting's contentions concerning claim limitations 40c, 40d, 42b and 42c in this exhibit and the other claim chart exhibits. For example, for claim 40 (and in addition to the 40 milliwatts deficiency noted above), CAO baldly asserts without evidence that "at least some" accused products "include multiple LED chips mounted on a panel of a heat sink," and that the chips "are substantially positioned in a single plane." CAO Lighting's contentions do not point to any structure in any product (exemplary or otherwise) that is alleged to correspond to "multiple LED chips mounted on a panel." Similarly, for claim 42, CAO asserts that "at least some" accused products "have a first heat sink on which multiple LED chips are positioned on a panel consistent with what is often found in the industry" (with reference to an "exemplar micrograph" labeled "Die 1" that does not even appear to be from any Signify product, let alone a properly accused Signify product), and further asserts (without any evidence, analysis or identification of allegedly corresponding structure) that the accused products "have two or more LED chips positioned on first heat sinks." These bald recitations of claim language without any supporting analysis or evidence fall well short of the requirements of PLR 3-1. Other claim charts are far more deficient, including for failing to identify any support whatsoever for the presence of claim limitations aside from "information and belief," despite having more than enough time to acquire and inspect any products CAO Lighting intended to accuse. *See, e.g.*, Exhibit 2 at 21-28 (referring to CAO Lighting's own made-up graphical image of chip layers and asserting the existence of certain layers in the accused products on "information and belief," with no supporting evidence). This deficiency is present across all claim charts.[2]

In addition, CAO Lighting's "doctrine of equivalents" (DOE) contentions set forth in its claim charts are facially deficient. "The Patent Local Rules require a limitation-by-limitation analysis, not a boilerplate reservation or assertion." *Essociate*, 2015 WL 12745799, at *5 (striking boilerplate DOE language and noting that "the doctrine of equivalents 'is not designed to give a

---

[2] While Signify continues to believe that CAO Lighting has failed to demonstrate the presence of additional claim limitations, including the presence of the first and second reflective layer recited in claim 8, in view of the Court's Order denying Signify's motion to dismiss (Dkt. 73), Signify reserves theose objections and will raise them at a later date, including following claim construction, consistent with the Court's ruling.



Counsel for CAO Lighting
November 8, 2022
Page 5

patentee a second shot at proving infringement' if a claim element is found to not directly infringe") (quoting *Rambus Inc. v. Hynix Semiconductor, Inc.*, No. C-05-00334 RMW, 2008 WL 5411564, at *3 (N.D. Cal. Dec. 29, 2008)); *see also InteraXon, Inc. v. NeuroTek LLC*, No. 15-cv-5290-KAW, 2016 WL 5118267, at *2 (N.D. Cal. Sept. 21, 2016) ("It is improper to assert the doctrine of equivalents with generic 'placeholder' language on the hope that future discovery might support such an assertion.") (quoting *Finjan*, 2015 WL 15174920, at *10). In its contentions, CAO Lighting offers only boilerplate DOE language that fails to provide a limitation-by-limitation allegation. For example, reproduced below is CAO Lighting's entire DOE contention for claim 8 in Exhibit 1:

> Moreover, to the extent that the accused A-Shaped lamps do not literally infringe this element, the accused A-Shaped lamps infringe under the doctrine of equivalents because providing a reflective layer including the patterned portion of the substrate functions in substantially the same way, performs in substantially the same way, and achieves substantially the same result as the claimed reflective layer. There are only insubstantial differences between providing beneficial reflection from the patterned portion of the substrate and providing a reflective layer in another location within the semiconductor chip.

The conclusory language above merely parrots the function/way/result test, and fails to put Signify on notice as to any cogent DOE theory. Similar conclusory language is used for at least claim limitations 1c and 1d in this exhibit, as well as the other claim chart exhibits. Such boilerplate language cannot preserve a doctrine of equivalents arguments. In addition, CAO Lighting's attempt in its cover pleading to "reserve[] the right" to possibly assert DOE theories in the future is improper. *See* Cover Pleading at 8:27-9:6. *See Essociate*, 2015 WL 12745799, at *5.

    **C.**    **CAO Lighting's Failure to Meet Its Burden of Demonstrating a Basis for Representativeness**

Further, in addition to the issues identified above, CAO Lighting's infringement contentions fail to provide any cogent basis for its contention that the handful of products identified in its claim chart exhibits are "representative" of the remainder of the 1,300+ products it accuses in its contentions.

"[R]epresentative infringement contentions may suffice" when "supported by adequate analysis showing that the accused products share the same critical characteristics." *Network Protection Sciences, LLC v. Fortinet, Inc.*, No. C 12–01106 WHA, 2013 WL 5402089, at *3 (N.D. Cal. Sept. 26, 2013). However, "in order to rely on a claim that one accused product represents another for purposes of Rule 3-1(c), a patentee must do more than state as much. A patentee must state *how*." *Silicon Labs. Inc. v. Cresta Tech. Corp.*, No. C 14–03227 PSG, 2015 WL 846679, at *2 (N.D. Cal. Feb. 25, 2015) (emphasis in original). "While … reverse engineering is not a per se requirement, courts do require an equivalent method that reveals on a claim by claim, element by element basis



Counsel for CAO Lighting
November 8, 2022
Page 6

which products [plaintiff] alleges are infringing the [asserted patent]." *Bender v. Freescale Semiconductor, Inc.*, No. C 09-1156 PHJ, 2010 WL 1689465, at *4 (N.D. Cal. Apr. 26, 2010) (citation omitted).

CAO Lighting's infringement contentions fall well short of these requirements. Indeed, CAO Lighting's assertions in support of representativeness consist of conclusory statements that the accused products "all have the same or substantially the same structure corresponding to the elements of the '961 patent claims," with no evidentiary support at all, much less evidence demonstrating the products are in fact the same on an element by element basis.

As an initial matter, CAO Lighting's Infringement Contentions fail to adequately allege that any single "representative" product practices each and every limitation of the asserted claims. For example, Exhibit 1 identifies the A19 Lamp 5A19/PER/927-22/P/E26/WGT20 as an exemplary representative product (with "other examples" listed in the chart), but in support of its contentions, CAO Lighting provides a purported structural analysis, "EDX analysis" and "SEM image" for only 13.5A19/LED/850/FR/P/ND for several claim limitations (*see, e.g.*, claim limitations 1d, 1f, 7b-g, 8pre), and provides a purported "spectral power distribution testing" analysis for only 8A19/LED/850 ND 120V for other claim limitations (*see, e.g.*, claim limitation 1i). CAO Lighting's mixing and matching from entirely different products fails to demonstrate that any single product allegedly practices each and every limitation of the asserted claims, much less demonstrate how all other products within the grouping are allegedly represented by that product. Without such a showing, there is no basis to assume that any product is representative of any other product. Indeed, CAO Lighting allegations fail to demonstrate that the alleged "representative products" charted in Exhibit 1 are representative of each other, much less representative of all other items listed in Exhibit A that purportedly fall within the same category. The same is true across CAO Lighting's other claim chart exhibits. In fact, other claim charts fail to provide ***any*** evidence to support such contentions, and instead rely on made-up images and "information and belief" as to the structure of products that CAO Lighting should have examined prior to serving its contentions. *See, e.g.*, Exhibit 2 at 10-11, 14, 21-28, 30-32; *see generally* similar lack of disclosures in Exhibits 3-9.

In addition, CAO Lighting has entirely failed to demonstrate that each accused product contains an LED chip containing the same layered structure that is allegedly contained in the chips it purportedly analyzed in connection with its infringement claim charts. Instead, CAO Lighting merely bases its contention on its own "say-so," asserting (without evidence) that all LED chips in existence are necessarily designed the same—regardless of their source, where they are made, and when they are made—and pointing to CAO Lighting's own graphic images of non-existent chips and structures it created, that bear no relation to the actual products. Based on CAO Lighting's contentions and actions to date, it appears that it has at most analyzed only a handful of accused products, and it makes its sweeping representativeness claims against the over 1,300



Counsel for CAO Lighting
November 8, 2022
Page 7

additional entries in Exhibit A based on no evidence at all, other than its own ipse dixit.³ This fails to comply with the requirements of N.D. Cal. PLR 3-1. *See, e.g.*, *Bender*, 2010 WL 1689465, at *3-4; *Tech. Properties Ltd. LLC v. Samsung Electronics Co., Ltd.*, 114 F. Supp. 3d 842, 848-51 (N.D. Cal. 2015).

Furthermore, the deficiencies described above are separate and apart from the deficiency identified in my e-mail of October 25, 2022, in which I explained that Signify is unable to determine which products listed in Exhibit A of the infringement contentions allegedly correspond to which claim charts set forth in Exhibits 1 to 9, because CAO Lighting's Infringement Contentions do not provide that required information, or otherwise indicate how those products are intended to be categorized, or how they are intended to correspond to the claim charts. We understood, based on my October 31, 2022 phone call with Mr. Vare, that CAO Lighting would separately be providing a supplemented Exhibit A identifying that information "a few days" after our call (see my October 31, 2022 email). However, it has been over a week now and we have not received any additional information to date.

As demonstrated above, CAO Lighting's deficiencies here go well beyond those addressed in the *Feit* lawsuit, which is factually distinguishable at least in view of CAO Lighting's failure in this case to sufficiently demonstrate a cognizable basis for its representativeness contentions across all accused products and product groupings. It has become clear from motions filed in related cases that CAO Lighting intends to carry its deficient representativeness allegations through to trial. Signify intends to bring these deficiencies to the Court should CAO Lighting fail to cure them in a reasonable time, and provide Signify with sufficient time thereafter to comply with responsive deadlines. *See, e.g.*, *Uniloc 2017 LLC v. Apple, Inc.*, No. 19-cv-01904-WHO, 2019 WL 8810168, at *4 (N.D. Cal. Dec. 16, 2019) ("'Until plaintiff meets the burden of providing infringement contentions compliant with Patent L.R. 3-1, the Court will not order defendant to proceed with discovery.'") (quoting *Bender v. Maxim Integrated Prod., Inc.*, No. C09-01152-SI, 2010 WL 1135762, at *2 (N.D. Cal. Mar. 22, 2010).

### D. CAO Lighting's Failure to Identify the Basis for its Willful Infringement Contentions

In its First Amended Complaint, CAO Lighting alleges that "Defendants' infringement has been willful." ECF No. 44 at 24. N.D. Cal. PLR 3-1(i) requires that, "[i]f a party claiming patent

---

³ Indeed, CAO Lighting appears to have allegedly performed an "SEM" analysis on a single accused product referenced in Exhibit 1 ("13.5A19/LED/850/FR/P/ND"), and fails to even mention SEM in its other claim chart exhibits. To the extent that CAO Lighting relies on this SEM analysis in its contentions, this further demonstrates that its infringement contentions across all charted products are deficient, and lack of any basis upon which to assert representativeness.



Counsel for CAO Lighting
November 8, 2022
Page 8

infringement alleges willful infringement," the contentions must contain "the basis for such allegation." CAO Lighting's Infringement Contentions fail to even mention the term "willful" infringement, much less present any basis supporting its willful infringement claim. As such, the contentions fail to comply with PLR 3-1 in this regard.

*   *   *

Please confirm that CAO Lighting will agree to immediately cure the deficiencies noted above with respect to its Infringement Contentions and provide Signify with sufficient additional time to analyze such corrected contentions and provide responsive discovery required by N.D. Cal. PLR 3-4. If you refuse to do so, please provide your availability to meet and confer on November 10 or 11, 2022, to discuss the issues identified in this letter.

In addition, please let us know if CAO Lighting will agree to a stipulated stay of its claims against Signify pending resolution of IPR proceedings against the '961 patent. If you agree to do so, it may obviate the need to address the infringement contention deficiencies noted above at this time. Otherwise, please also be prepared to discuss the need for a stay during the parties' meet and confer.

Sincerely,

*/s/ Jason M. Dorsky*

Jason M. Dorsky

cc:     Counsel of Record